IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

MECHANICAL CONTRACTORS
ASSOCIATION OF AMERICA, INC.
1385 Piccard Dr., Rockville,
Maryland 20850

        Plaintiff,

v.

HILTON FRANCHISE HOLDING LLC
7930 Jones Branch Drive. Suite 1100
McLean, Virginia 22102

        Defendant.

:
:
:
:
:
:
:
:
:   C.A. No.
:
:
:
:
:
:
:

---

## COMPLAINT

Plaintiff, Mechanical Contractors Association of America, Inc. ("MCAA"), by and through its undersigned counsel, hereby brings this action against Defendant Hilton Franchise Holding LLC to address its deceptive conduct and that of its franchisee, causing damage to MCAA and its members.

**I.    PARTIES**

1. MCAA is a non-profit corporation. It is a national organization serving the needs of its members, who are comprised of approximately 2,600 member firms involved in heating, air conditioning, refrigeration, plumbing, piping, and mechanical service. MCAA provides its members with high-quality educational materials and programs to help them attain the highest level of managerial and technical expertise.

2. MCAA is incorporated in New York. Its headquarters is located at 1385 Piccard Dr., Rockville, Maryland 20850.

1

3. Grand Wailea Resort Hotel & Spa ("Grand Wailea Resort") is a hotel and resort located at 3850 Wailea Alanui Drive, Wailea, Hawai'i 96753. Grand Wailea Resort is a Waldorf Astoria Resort, a luxury brand owned by Hilton Worldwide Holdings Inc., an affiliate of Hilton Franchise Holding LLC.

4. Hilton Franchise Holding LLC, a Delaware limited liability company ("Hilton") is the franchisor of Waldorf Astoria Resorts brand and is located at 7930 Jones Branch Drive. Suite 1100, McLean, Virginia 22102.

5. As such, Hilton is the franchisor of Grand Wailea Resort.

6. Hilton's sole member is Hilton Domestic Operating Company Inc.

7. Hilton Domestic Operating Company Inc. is incorporated in Delaware, and its principal place of business is7930 Jones Branch Drive. Suite 1100, McLean, Virginia 22102.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship between MCAA and Hilton, and the amount in controversy exceeds $75,000.

9. This Court has personal jurisdiction over Hilton as its sole member, Hilton Domestic Operating Company Inc., is a citizen of the State of Delaware.

10. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) as Hilton Domestic Operating Company Inc. is organized in the State of Delaware and accordingly this district.

## III. BACKGROUND

11. In 2014, Grand Wailea Resort was owned by GWR Wailea Property LLC ("GWR").

12. In 2018, BRE Iconic Holdings LLC ("BRE Holdings") acquired Grand Wailea Resort from GWR and BRE Holdings continues to own Grand Wailea Resort.

13. BRE Holdings operates Grand Wailea Resort under the brand Waldorf Astoria Resorts.

14. BRE Holdings is the franchisee of Hilton through its ownership of a Waldorf Astoria Resort brand hotel.

15. Grand Wailea Resort is managed and operated by BRE Iconic GWR Owner LLC d/b/a Grand Wailea Resort Hotel & Spa, A Waldorf Astoria Resort ("BRE Iconic"). BRE Holdings and BRE Iconic are sometimes collectively referred to herein as "BRE."

### A. MCAA's Decision to Enter into an Agreement with BRE and the Terms

16. On January 6, 2014, MCAA and GWR entered into a Letter of Agreement (the "Agreement"). A copy of the Agreement is attached hereto as **Exhibit "1"** and is incorporated by reference.

17. Waldorf Astoria Resorts have a certain prestige and goodwill that BRE and Hilton benefit from and use to their advantage to attract customers, such as MCAA.

18. MCAA selected Grand Wailea Resort to enter into this Agreement due to the manner in which Hilton advertises and holds out Waldorf Astoria Resorts.

19. The Agreement, among others, provides that GWR (and later BRE) will set aside a room block from March 9-22, 2020 for MCAA's members, and other individuals, who will be attending MCAA's 2020 annual convention in Wailea, Hawai'i between March 11-20, 2020 (the "2020 Convention").

20. MCAA entered into the Agreement for the benefit of its individual members and handled all the reservation arrangements and logistics on the members' behalf. Ex. 1 § I(N)-(R).

21.     Reservations for less than five room nights were required to be prepaid by individual members and reservations for more than five room nights would only be guaranteed if five nights' deposit was received from the individual members to GWR (and later to BRE). Ex. 1 § I(O).

22.     On June 14, 2019, MCAA and BRE Iconic, acting on behalf of BRE Holdings, the successor in interest to the Agreement and current owner of Grand Wailea Resort, Hilton's franchisee, entered into an amendment to the Agreement to expand the number of room nights reserved. A copy of the Amendment is attached hereto as **Exhibit "2"** and is incorporated by reference.

23.     MCAA's individual members paid at least $1,409,160.55 collectively to BRE as a deposit for their reservations ("Individual Member Deposits").

24.     MCAA made arrangements with at least five different hotels for the 2020 Convention, and made the five hotels available for its members to select.

25.     The members who chose to stay at Grand Wailea Resort made their decision to stay there due to the manner in which Hilton hold Waldorf Astoria Resorts out to the public, i.e., the "Waldorf Astoria Resort" prestige.

26.     The Agreement contains a force majeure provision ("Force Majeure Section") that allows either party to cancel its performance under the Agreement should any of the events contained in the Force Majeure Section occur.[1] *Id.*, at 13 (§ IX(I)).

---

[1] In pertinent part, the Force Majeure Section provides:

> The performance of this Agreement by either party is subject to suspension, rescheduling or cancelation due to the acts of God, war, terrorism (including, but not limited to, biological or chemical), government regulation, disaster, fire, hurricanes, strikes, civil disorder, curtailment of transportation facilities preventing or unreasonably delaying at least 25% of meeting attendees and guests from appearing at MCAA's meeting, or other similar causes beyond the control of the parties making in inadvisable, illegal, or impossible to hold the meeting as planned.

B. **COVID-19 and its Effect on the Agreement**

27.     Due to COVID-19 and its ramifications, on March 12, 2020, MCAA canceled the 2020 Convention.

28.     Due to COVID-19 causing MCAA to the cancel the 2020 Convention, MCAA invoked the Force Majeure Section in the Agreement, terminating the parties' obligations under the Agreement.[2]

29.     Because the 2020 Convention was canceled, MCAA members who were going to stay at the Grand Wailea Resort during the 2020 Convention canceled their reservations.

30.     Due to BRE's refusal to honor MCAA's right to cancel the obligations under the Agreement, on May 12, 2020, MCAA filed a lawsuit against BRE in the Circuit Court for Montgomery County, Maryland to enforce its right to terminate its obligations under the Agreement (the "Maryland Lawsuit").  A copy of MCAA's complaint from the Maryland Lawsuit is attached hereto as **Exhibit "3."**

C. **BRE Fraudulently Induced MCAA to Pay It $1,000,000**

31.     Before the filing of the Maryland Lawsuit, by email dated March 12, 2020, MCAA informed BRE of its decision to cancel the 2020 Convention.  A copy of the March 12, 2020 email from MCAA to BRE is attached hereto as **Exhibit "4"** and is incorporated by reference.

32.     On that same date, MCAA and BRE discussed BRE's refunding the Individual Member Deposits, and BRE stated that they did not have enough money to refund the Individual Member Deposits.

---

Ex. 1, § IX(I).

[2] Before MCAA invoked the Force Majeure Section, it had already paid deposits of $5,000 to GWR on January 24, 2014, and $1,176,396.05 in estimated food and beverage charges to BRE on March 6, 2020.

33. Because of this representation by BRE, MCAA agreed to provide BRE with $1,000,000 temporarily to permit BRE to refund the Individual Member Deposits.

34. MCAA wanted to make sure its individual members' deposits were refunded right away.

35. Because of this representation by BRE, MCAA believed that this $1,000,000 was to go strictly to refunding the Individual Members' Deposits.

36. BRE agreed to use this $1,000,000 as part of its refunding of the Individual Member Deposits and represented this understanding to MCAA.

37. Based on BRE's representation, MCAA provided BRE with the $1,000,000.

38. MCAA would not have given BRE this $1,000,000 if it had not been for BRE's promise that it will use the money to refund the Individual Member Deposits.

39. After its receipt of the money, BRE decided to keep the $1,000,000 for itself.

40. BRE then issued a cancelation invoice (the "Cancelation Invoice") to MCAA demanding an additional $679,294.73 in cancelation monies.[3] A copy of the Cancelation Invoice is attached hereto as **Exhibit "5"** and is incorporated by reference.

41. The Cancelation Invoice indicates that MCAA has already paid BRE $2,181,396.05. Ex. 5.

42. This $2,181,396.05 is being wrongfully withheld from MCAA by BRE under a breach of contract theory, which is the subject of the Maryland Lawsuit. Ex. 3.

43. The Cancelation Invoice further demonstrates that BRE never intended to use the $1,000,000 for the purpose of issuing refunds because the $1,000,000 was included in the

---

[3] This additional sum demanded represents the balance of the fees of the anticipated room nights plus tax ($2,768,065.62) less (a) payments to BRE from room nights actually used by some members who chose to stay at the hotel despite the cancelation of the convention ($782,494), (b) the $1,000,000, and (c) the remainder of funds left over ($365,040.621) from the estimated beverage costs for a subtotal of $620,531.00; plus $58,7763.73 in current master balances charges for a total of $679,294.73.

$2,181,396.05 that went toward paying BRE directly, i.e., the $1,000,000 was not set aside for the Individual Member Deposits.  Ex. 5.

### D. BRE's and Hilton's Failure to Issue Refunds to MCAA and Its Individual Members

44. In addition to the fraud in acquiring the $1,000,000, as of this date, BRE has failed and refused to return the Individual Member Deposits for at least $1,409,160.55, which should be refunded to the individual members who made these payments through the original payment methods used.

45. Upon vising the Grand Wailea website, clicking a button titled, "COVID-19 Update" redirects to the Hilton's website and a page titled, "Statement From Hilton: Coronavirus," which provides, in pertinent part:

> We have made additional adjustments to our modification and cancelation policies to provide you with maximum flexibility while travel remains restricted in many parts of the world.
>
> **Existing Reservations.** All individual reservations—even those described as "non-cancellable" ("Advanced Purchase")—that are scheduled for arrival on or before June 30, 2020 can be changed or canceled at no charge, up to 24 hours before your scheduled arrival day.

(the "COVID-19 Refund Policy"). Screenshot of Hilton website, "Statement From Hilton: Coronavirus," a copy of which attached hereto as **Exhibit "6"** and is incorporated by reference (last visited May 13, 2020) (emphasis in the original).

46. Hilton's statement on coronavirus indicates that it was updated as of March 25, 2020.  Ex. 6.

47. All of MCAA's individual members were scheduled to arrive at Grand Wailea Resort before June 30, 2020.

48. Accordingly, under the COVID-19 Refund Policy, all of MCAA's individual members are eligible to cancel their reservations, even those described as "non-cancellable." *Id.*

7

49. Rather than comply with the COVID-19 Refund Policy, BRE issued the Cancelation Invoice and later informed MCAA that the Cancelation Invoice must be paid in full to release the Individual Member Deposits, which is not in accordance with the COVID-19 Refund Policy.

50. Despite knowing that it never intended to refund any deposits, BRE representatives originally told individual MCAA members that it would promptly return their deposits.

51. These representations were false.

52. Moreover, BRE is now telling MCAA's individual members that they must contact MCAA regarding any refunds, which is contrary to the COVID-19 Refund Policy.

53. BRE never acknowledged the COVID-19 Refund Policy.

54. BRE must comply with the COVID-19 Refund Policy.

55. Hilton representatives are also engaging in deceptive conduct and have refused to return the Individual Member Deposits.

56. For instance, a Hilton employee represented to an MCAA individual member that she was already refunded her deposit when she was not. A copy of the email chain between Hilton and the individual member, Paula Bowe, is attached hereto as **Exhibit "7"** and is incorporated by reference.

57. After insisting to Ms. Bowe that her refund had already been processed, Hilton changed its stance later. Ex. 7.

58. Hilton told Ms. Bowe that the refund of her deposit, among others, would not be made until a compromise is reached between MCAA and BRE. *Id.*

59. This statement is contrary to the COVID-19 Refund Policy.

60. Hilton's representatives never acknowledged the COVID-19 Refund Policy.

61. MCAA believes that the handling of Ms. Bowe's refund by Hilton is consistent with all individual members who have reached out to BRE or Hilton for a refund of their deposit.

62. Hilton must comply with and honor its COVID-19 Refund Policy.

63. Not only must Hilton honor its own Policy, it must supervise and ensure that its franchisee, BRE, is complying with the COVID-19 Refund Policy, which is made applicable to BRE.

64. Hilton is failing and refusing to adhere to the COVID-19 Refund Policy in refusing to refund the Individual Members' Deposits.

65. Hilton failed to supervise BRE to ensure BRE is complying with the COVID-19 Refund Policy.

### E. MCAA's Correspondence to Hilton

66. On May 18, 2020, MCAA, through its attorney, sent a letter to Hilton Hotels Corporation's Executive Vice President and General Counsel, explaining it 1) is vicariously liable, as the franchisor of BRE, for BRE's fraudulent conduct in inducing MCAA to pay the $1,000,000 and 2) is directly liable for its failure to adhere to its own refund policy (the "Demand Letter").  A copy of the Demand Letter from MCAA to Hilton is attached hereto as **Exhibit "8"** and is incorporated by reference.

67. Hilton did not respond to the Demand Letter.

68. The Hilton Demand Letter demanded Hilton provide a full refund of the $1,000,000 MCAA tendered to BRE based on BRE's fraudulent misrepresentations in inducing MCAA to tender the $1,000,000. Ex. 8.

9

69. The Demand Letter also demanded that it comply with the COVID-19 Refund Policy by refunding the Individual Member Deposits. *Id.*

70. The Demand Letter explained that Hilton's refusal to refund the Individual Member Deposits is in violation of its own COVID-19 Refund Policy. *Id.*

## COUNT I
### Fraud: Vicarious liability

71. MCAA incorporates the preceding paragraphs as if they are set forth at length herein.

72. Hilton is the franchisor for Grand Wailea Resort, which is owned by its franchisee, BRE.

73. As the franchisor/principal for Grand Wailea Resort, Hilton is liable for BRE's fraudulent conduct as BRE is the franchisee/agent of Hilton.

74. On March 12, 2020, BRE agreed to refund the Individual Member Deposits.

75. BRE knew or should have known that MCAA would provide BRE with cash to protect MCAA's individual members.

76. BRE falsely represented that it did not have enough money to refund the Individual Member Deposits.

77. BRE also falsely represented that it would use MCAA's cash, if provided to BRE, to refund MCAA individual members' deposits.

78. MCAA justifiably relied on BRE's representation and provided BRE $1,000,000 so that BRE could pay the Individual Member Deposits.

79. BRE, however, never had any intention of refunding the Individual Member Deposits and took the $1,000,000 deposit from MCAA under false pretenses.

80. BRE's conduct shows a wanton or reckless disregard for the rights of MCAA and MCAA's members.

81. As of the date of the filing of this Complaint, BRE is wrongfully holding MCAA's $1,000,000 and MCAA is injured through its deprivation of this amount and need to engage the court to secure its return.

82. BRE's conduct in fraudulently inducing MCAA to pay $1,000,000 is imputed onto Hilton, the principal/franchisor of BRE.

83. As the principal of BRE, Hilton is vicariously liable for its agent's fraudulent conduct.

**WHEREFORE**, MCAA respectfully prays for this Honorable Court to enter judgment in favor of MCAA and against Hilton for damages in the amount of $1,000,000 and any other relief the Court deems necessary and punitive damages along with interest, costs, and fees incurred by MCAA in prosecuting this action and any other relief the Court deems necessary.

## COUNT II
### Breach of Contract: Vicarious Liability

84. MCAA incorporates the preceding paragraphs as if they are set forth at length herein.

85. BRE breached the Agreement with MCAA when it refused to refund the monies MCAA paid under the Agreement.

86. MCAA is entitled to having these deposits refunded because COVID-19 triggered the Force Majeure Section under the Agreement and MCAA informed BRE of such.

87. Because the Force Majeure Section was triggered, MCAA's and BRE's obligations under the agreement were terminated.

88. Despite the Force Majeure Section, BRE has refused to return the monies paid to it by MCAA, breaching the Agreement.

89. BRE's conduct in breaching the Agreement is imputed onto Hilton, the principal/franchisor of BRE.

90. Hilton, as the principal of BRE, is, therefore, vicariously liable for its agent's (BRE) breach of the Agreement.

**WHEREFORE**, MCAA respectfully prays for this Honorable Court to enter judgment in favor of MCAA and against Hilton for damages in the amount of $2,181,396.05 and any other relief the Court deems necessary and punitive damages along with interest, costs, and fees incurred by MCAA in prosecuting this action and any other relief the Court deems necessary.

### COUNT III
### Fraud

91. MCAA incorporates the preceding paragraphs as if they are set forth at length herein.

92. The MCAA individual members that elected to make reservations at the Grand Wailea Resort for the 2020 Convention did so because of the manner in which Hilton holds out Waldorf Astoria Resorts to the public.

93. There is a certain prestige with Waldorf Astoria Resorts that Hilton and BRE use to their advantage and benefit from in order to attract individuals to stay at Waldorf Astoria Resorts.

94. Without this brand image of Waldorf Astoria Resorts created by Hilton, certain individuals would not have chosen to make reservations with the Grand Wailea Resort as they had other four hotels as options.

95. This brand image represented by Hilton to the public includes the representation that Hilton always complies with its own policies as a way to distinguish itself from other hotel brands.

96. This representation is a marketing tool to induce customers to select Hilton brand hotels over other hotel brands.

97. Due to the COVID-19 pandemic, Hilton developed its COVID-19 Refund Policy, which applies to Grand Wailea Resort, primarily as a means of marketing to further its brand image.

98. Hilton's COVID-19 Refund Policy provides that "[a]ll individual reservations—even those described as "non-cancellable" ("Advanced Purchase")—that are scheduled for arrival on or before June 30, 2020 can be changed or canceled at no charge, up to 24 hours before your scheduled arrival day." Ex. 6.

99. When dealing with MCAA's individual members, Hilton never even acknowledged the existence of the COVID-19 Refund Policy.

100. Hilton must honor this policy and make proper refunds to those individuals who are entitled to refunds, such as MCAA's individual members.

101. All of MCAA's individual members were scheduled to arrive at Grand Wailea Resort before June 30, 2020 and are covered by the COVID-19 Refund Policy.

102. Hilton has not complied with its own COVID-19 Refund Policy as MCAA individual members are eligible to have their reservations "cancelled at no charge."

103. Hilton Hotels Corporation's Executive Vice President and General Counsel was put on notice of BRE's failure to comply with the COVID-19 Refund Policy, yet, BRE continued

13

to not honor the COVID-19 Refund Policy and Hilton has taken no action to remedy this conduct.

104. Hilton is directly liable for the lack of refunds for the Individual Member Deposits, which is contrary to the COVID-19 Refund Policy.

105. Hilton's conduct shows a wanton or reckless disregard for the rights of MCAA and MCAA's individual members.

106. By not complying with the COVID-19 Refund Policy, Hilton is defrauding MCAA's individual members through deceptive marketing practices.

107. MCAA believes Hilton never intended to comply with its COVID-19 Refund Policy as it pertains to MCAA's individual members that made reservations with the Grand Wailea Resort.

108. As of the date of this filing, Hilton has not returned the Individual Member Deposits to the individual members, which totals at least $1,409,160.55, and the individual members are injured through deprivation of their portion of this amount and need to engage the court to secure its return.

**WHEREFORE**, MCAA respectfully prays for this Honorable Court to enter judgment in favor of MCAA and against Hilton for damages in the amount of at least $1,409,160.55 to be paid directly back to the individual members who have not yet received refunds from BRE and made these payments through their respective payment methods, and any other relief the Court deems necessary and punitive damages along with interest, costs, and fees incurred by MCAA in prosecuting this action and any other relief the Court deems necessary.

## COUNT IV
### Negligent Supervision

109. MCAA incorporates the preceding paragraphs as if they are set forth at length herein.

110. Hilton's COVID-19 Refund Policy applies to Grand Wailea Resort and BRE, as the owner of the Grand Wailea Resort, must honor it.

111. The COVID-19 Refund Policy provides that "[a]ll individual reservations—even those described as "non-cancellable" ("Advanced Purchase")—that are scheduled for arrival on or before June 30, 2020 can be changed or canceled at no charge, up to 24 hours before your scheduled arrival day." Ex. 6.

112. Anyone visiting the Grand Wailea Resort website looking for information regarding the Hotel's cancelation policy in light of COVID-19 is redirected to the COVID-19 Refund Policy.

113. BRE, as a franchisee of Hilton, must honor this Policy and make proper refunds to those individuals who are entitled to refunds, such as MCAA's individual members.

114. Hilton, as the franchisor of Hilton, must ensure that its franchisee (BRE) is complying with all of its policies, including the COVID-19 Refund Policy.

115. Hilton ensures its franchisees are complying with its policies through proper supervision techniques.

116. All of MCAA's individual members were scheduled to arrive at Grand Wailea Resort before June 30, 2020 and are covered by the COVID-19 Refund Policy.

117. BRE has not complied with the COVID-19 Refund Policy as MCAA individual members are eligible to have their reservations "cancelled at no charge."

118. Hilton has failed to supervise BRE's and ensure that BRE is complying with the COVID-19 Refund Policy.

119. As such, Hilton's failure to supervise BRE makes it directly liable for BRE's failure to refund the Individual Members' Deposits, which is contrary to the COVID-19 Refund Policy.

120. As of the date of this filing, Hilton has failed to supervise BRE to the make sure BRE is complying with its policies through refunding the Individual Member Deposits to the individual members, which totals at least $1,409,160.55, under the COVID-19 Refund Policy.

121. Therefore, the individual members are injured through deprivation of their portion of this amount and need to engage the court to secure its return.

**WHEREFORE**, MCAA respectfully prays for this Honorable Court to enter judgment in favor of MCAA and against Hilton for damages in the amount of at least $1,409,160.55 to be paid directly back to the individual members who have not yet received refunds from BRE and made these payments through their respective payment methods, and any other relief the Court deems necessary plus costs, and fees incurred by MCAA in prosecuting this action and any other relief the Court deems necessary.

| | |
|---|---|
| OF COUNSEL: | CONNOLLY GALLAGHER LLP |
| | */s/ Timothy M. Holly* |
| Edward T. Kang | Timothy M. Holly (Del. Bar No. 4106) |
| KANG HAGGERTY & | 1201 North Market Street, 20th Floor |
| FETBROYT LLC | Wilmington, DE 19801 |
| 123 S. Broad Street, Suite 1670 | Telephone: (302) 252-4217 |
| Philadelphia, PA 19109 | Facsimile: (302) 757-7272 |
| ekang@khflaw.com | tholly@connollygallagher.com |
| | |
| | *Attorneys for Plaintiff Mechanical Contractors* |
| Dated: June 5, 2020 | *Association of America, Inc.* |